```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN
```

MICHELLE MAY,

    Plaintiff,

v.

                                  Civil No. 2012-78

BLUEBEARDS CASTLE, INC., SPM RESORTS, INC., MARGARET JOHNSON in her individual and corporate capacity, KAREN MIDDLETON in her individual and corporate capacity, and WILLIAM YOUNG in his individual and corporate capacity,

    Defendants.

**ATTORNEYS:**

**Lee J. Rohn, Esq.**
Lee J. Rohn and Associates
St. Croix, VI
    *For the plaintiff Michelle May,*

**Ravinder Nagi, Esq.**
Bolt Nagi PC
St. Thomas, VI
    *For defendants SPM Resorts, Inc., Margaret Johnson, Karen Middleton, and William Young,*

**Defendant Bluebeard's Castle, Inc.**
    *Unrepresented entity.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of defendants SPM Resorts, Inc., Margaret Johnson, Karen Middleton, and William Young (the "SPM defendants") to refer this matter to arbitration.

## I.    FACTUAL AND PROCEDURAL HISTORY

Defendant SPM Resorts, Inc. ("SPM") is a resort management company. SPM manages Bluebeard's Castle, Inc. ("Bluebeard's"), a hotel located on St. Thomas, U.S. Virgin Islands. At all relevant times William Young ("Young") was president and chief operating officer of SPM. Karen Middleton ("Middleton") was the corporate human resources manager for SPM. Margaret Johnson ("Johnson") was employed by SPM as the general manager at Bluebeard's.

The plaintiff Michelle May ("May") was hired by Johnson on February 7, 2011, to work at Bluebeard's. In the course of beginning her employment at Bluebeard's, May signed various employment forms, including an employment contract. Johnson was May's supervisor.

May alleges that during her employment at Bluebeard's, Johnson was discriminatory in her treatment of black West Indian employees. May claims that Johnson allowed white employees to use company vehicles but disallowed use by black employees such as May, despite May's contract allowing for vehicle use. May also claims that Johnson provided housing as compensation to white employees, but denied it to black employees. Among other things, May also claims that staff discipline procedures, hours, compensation, and accountability was disparate and based on

race.  She states that she informed the MRL defendants of this disparate treatment.

May alleges that Young and Middleton knew or had reason to know of this ongoing discrimination. She further claims that, despite this knowledge, nothing was done to redress the discriminatory practices.

May claims that she confronted Johnson about the alleged discriminatory practices.  She states that as a result of this effort, Johnson sent May home on indefinite suspension for insubordination.  On June 10, 2011, Young sent May a letter terminating her employment. Finally, May states that as a result of this alleged discrimination and her eventual termination, she suffered injuries.

On October 5, 2011, May filed a complaint in this matter. The complaint was amended on May 23, 2013 (the "First Amended Complaint").

On July 16, 2013, the SPM defendants filed the instant motion to compel arbitration.  To date, May has not responded to the motion.

Thereafter, on August 13, 2013, May filed a second amended complaint (the "Second Amended Complaint").  In it, May alleged four claims: (1) Prohibited Employment Discrimination on the Basis of Race, Color and National Origin under Title 7 of the United States Code and Title 10 of the Virgin Islands Code; (2)

Case: 3:12-cv-00078-CVG-RM Document #: 68 Filed: 02/28/14 Page 4 of 11

May v. Bluebeards Castle, Inc., et al.
Civil No. 2012-78
Order
Page 4

Negligent Supervision; (3) Intentional Infliction of Emotional Distress; and (4) Defamation.

## II. DISCUSSION

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to overcome judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA provides guidance on what a court is required to do where parties to a dispute are also parties to an arbitration agreement. Under the FAA, federal courts are required to enforce written agreements to arbitrate disputes. "The FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001); *see also Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

"Under... the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, the court must determine whether the parties entered into a valid arbitration agreement. In conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Plaskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 338 (D.V.I. 2003)

"[U]pon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If a

Case: 3:12-cv-00078-CVG-RM   Document #: 68   Filed: 02/28/14   Page 5 of 11

May v. Bluebeards Castle, Inc., et al.
Civil No. 2012-78
Order
Page 5

party to an agreement that requires arbitration alleges wrongdoing that involves matters covered by an arbitration agreement, "the claims must be arbitrated, regardless of the legal labels ascribed to them." *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)).

### III. ANALYSIS

May's Second Amended Complaint challenges her treatment while an employee of SPM. She also challenges her eventual termination. To determine whether those claims are arbitrable, the Court must first address whether there is a valid arbitration provision.

In the course of being hired, May signed a document entitled "Employee 'Mutual Agreement to Arbitrate'" ("EMAA"). The EMAA states:

> [I]n order to gain the benefits of a speedy, impartial, and cost-effective dispute resolution procedure, and for good and valid consideration as covenanted below and in addition to any other consideration, and intending to be legally bound, SPM Resorts, Inc. (as management company for Bluebeard's Castle in St. Thomas, USVI), hereinafter referred to as "SPM", and I hereby agree that, except as otherwise provided herein, all disputes and claims for which a court otherwise would be authorized by law to grant relief, in any manner, that I may have, now or in the future, during or after my employment with SPM, of any and every kind or nature whatsoever with or against SPM, any of SPM's affiliated or subsidiary companies, partners, joint ventures, owners of properties SPM

Case: 3:12-cv-00078-CVG-RM   Document #: 68   Filed: 02/28/14   Page 6 of 11

May v. Bluebeards Castle, Inc., et al.
Civil No. 2012-78
Order
Page 6

>     manages, and/or any of his, her, its or their
>     directors, officers, employees or agents, or any
>     disputes and claims that SPM may have against me
>     (collectively "Claims"), shall be submitted to
>     the American Arbitration Association ("AAA") to
>     be resolved and determined through final and
>     binding arbitration before a single arbitrator
>     and to be conducted in accordance with the
>     National Rules for the Resolution of Employment
>     Disputes of the AAA. . . .

(ECF No. 37-1, EMAA.)

The EMAA, covers any claims

>     that arise out of or are related to the offer of
>     employment or promotion extended by SPM to [the
>     employee], any withdrawal or recission of that
>     offer, any aspect of [the employee's] employment
>     with SPM or the terms and conditions of that
>     employment, any claim for bonus, vacation pay or
>     other compensation, *any termination of that
>     employment* and *any Claim of discrimination*,
>     retaliation, or harassment based upon age, race,
>     religion, sex, ethnicity, . . . *or any other
>     unlawful basis, or any other unlawful conduct,
>     under any applicable federal, state, local or
>     other statutes* . . . including, without
>     limitation, Claims [the employee] may have under
>     . . . Title VII of the Civil Rights Act of 1964,
>     the Civil Rights Act of 1991, the Virgin Islands
>     Civil Rights Act and the Virgin Islands
>     Discrimination in Employment Act . . .

(ECF No. 37-1, EMAA)(emphasis added).

"A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). In the Virgin Islands, a contract is formed when the parties mutually assent to the terms and conditions of the agreement. *See, e.g.*,

Case: 3:12-cv-00078-CVG-RM Document #: 68 Filed: 02/28/14 Page 7 of 11

May v. Bluebeards Castle, Inc., et al.
Civil No. 2012-78
Order
Page 7

*Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 761 F. Supp. 1231, 1233 (D.V.I. 1991), *aff'd* 998 F.2d 145 (3d Cir. 1993). Mutual assent occurs where there is an offer from one party which is accepted by the other party. *Gardiner v. V.I. Water and Power Auth.*, 896 F. Supp. 491, 497 (D.V.I. 1995). A contract also requires consideration. *Plaskett*, 243 F. Supp. 2d at 338. Thus a contract is formed where there is: (1) an offer, (2) an acceptance, and (3) consideration.

Here, Bluebeard's and SPM, through Johnson, hired May on February 7, 2011. May was given employment documents that set out the terms and conditions of her employment. That constituted an offer from SPM and Bluebeard's. *See Gardiner*, 896 F. Supp. at 497 (stating that an offer exists where the offeree would be justified in understanding that all that was necessary to conclude the bargain was the offeree's assent.) May signed those employment agreements, and there is no indication that she altered or contested the terms while doing so. This constitutes acceptance. *Id.* ("An offer is accepted if, and only if, the terms of the acceptance mirror those of the offer.") Finally, as both parties were bound by the arbitration clause, there existed adequate consideration. *Blair*, 283 F.3d at 603 ("When both parties have agreed to be bound by arbitration, adequate consideration exists[.]") The Court also notes that May

Case: 3:12-cv-00078-CVG-RM Document #: 68 Filed: 02/28/14 Page 8 of 11

May v. Bluebeards Castle, Ink., et al.
Civil No. 2012-78
Order
Page 8

does not challenge the validity of the agreement. As such, the Court finds that the arbitration agreement was valid.

Having determined that the arbitration clause is valid, the Court must next determine whether the claims in May's Second Amended Complaint are covered by the arbitration clause.

In her Second Amended Complaint, May asserts four claims: (1) Prohibited Employment Discrimination on the Basis of Race, Color and National Origin under Title 7 of the United States Code and Title 10 of the Virgin Islands Code; (2) Negligent Supervision; (3) Intentional Infliction of Emotional Distress; and (4) Defamation.

It is clear from both the counts and the facts alleged that the focus of the ongoing dispute is Johnson's alleged discriminatory conduct and the alleged failure to prevent that conduct by the other SPM Defendants and Bluebeard's. Discriminatory conduct, and claims related thereto, are clearly within the ambit of the arbitration clause May signed. (ECF No. 37-1, EMAA) (stating it relates to any claim of discrimination on the basis of race or ethnicity and any claim related to the alleged violation of federal or local law). Count One, which specifically alleges discrimination on the basis of race in violation of federal and local law, is thus within the ambit of the arbitration clause.

Case: 3:12-cv-00078-CVG-RM Document #: 68 Filed: 02/28/14 Page 9 of 11

May v. Bluebeards Castle, Ink, et al.
Civil No. 2012-78
Order
Page 9

It is well-established that where separate tort claims arise out of the same facts as clearly arbitrable claims, a broadly worded arbitration provision embodies such claims. *Richardson v. V.I. Port Auth.*, Civ. No. 2009-139, 2010 WL 1641154, at *12 (D.V.I. April 21, 2010); *see CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir.2005) ("Broadly worded arbitration clauses ... are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement); *P & P Indus. v. Sutter Corp.*, 179 F.3d 861, 871-872 (10th Cir.1999) (arbitration clause which provided that "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" shall be arbitrable, was broad enough to encompass tort claims where the tort allegations were closely connected to breach of contract action).

As Count One squarely addresses allegations of racial discrimination and violations of federal and local anti-discrimination laws, that Count is within the reach of the arbitration clause. Thus, to the extent that the alleged torts in this case are related to the same facts underlying the discrimination claim, those torts are within the arbitration clause's reach as well. *See CD Partners, LLC*, 424 F.3d at 800; *P & P Indus.*, 179 F.3d at 871-872; *Richardson*, 2010 WL 1641154, at *12.

Case: 3:12-cv-00078-CVG-RM  Document #: 68  Filed: 02/28/14  Page 10 of 11

May v. Bluebeards Castle, The, et al.
Civil No. 2012-78
Order
Page 10

The Count Two, Negligent Supervision, alleges that Margaret Johnson acted in a discriminatory manner against black West Indian employees.  It further alleges that the other SPM Defendants were aware of this discriminatory activity, and failed to address it.  These facts, which underpin Count Two, are some of the same facts alleged in Count One, the discrimination claim.  That is, the facts are the same between the tort claim in Count Two, and the clearly arbitrable claims in Count One.

Similarly, May's claim in Count Three, Intentional Infliction of Emotional Distress, is based on factual allegations of discriminatory behavior.  May claims that during her employment at Bluebeard's, she was subjected to a pattern of race-based discrimination.  She further alleges that as a result of the alleged discrimination, she was terminated from her position.  May alleges that the racial discrimination she endured was extreme and outrageous conduct, and that as a result she suffered emotional distress.  The factual underpinnings of this claim, that there was ongoing racial discrimination which was never addressed or ameliorated and that such discrimination resulted in termination, also underpin Count One's discrimination claims. Thus, the facts are the same between the tort claim in Count Three, and the clearly arbitrable claims in Count One.

Finally, Count Four alleges that the defendants defamed May. The defamatory statements at issue purportedly occurred when Margaret Johnson gave information to the manager of another resort about May. May claims that the information Johnson gave was false. The underpinnings of this claim, therefore, are allegations that Johnson, for discriminatory or retaliatory reasons, prevented May from seeking employment at other resorts. These allegations are intertwined with the allegations in Count One. That is, both counts allege the same or related facts – that Johnson discriminated against black West Indian employees both in word and action. As such, this claim would also be arbitrable as it is related to a clearly arbitrable claim, Count One.

The premises considered, it is hereby

**ORDERED** that this matter is referred to arbitration.

S\_____
**Curtis V. Gómez
District Judge**