DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| MICHELLE MAY,           )<br>          )<br>      Plaintiff,    )<br>          )<br>   v.          )<br>          )<br>BLUEBEARDS CASTLE, INC., SPM RESORTS, )<br>INC., MARGARET JOHNSON in her   )<br>individual and corporate capacity,  )<br>KAREN MIDDLETON in her individual and )<br>corporate capacity, and WILLIAM YOUNG )<br>in his individual and corporate   )<br>capacity,          )<br>          )<br>      Defendants.   )<br>————————————————) | Civil No. 2012–78 |

ATTORNEYS:

**Lee J. Rohn, Esq.**
Lee J. Rohn and Associates
St. Croix, VI
    *For the plaintiff Michelle May,*

**Ravinder Nagi, Esq.**
Bolt Nagi PC
St. Thomas, VI
    *For defendants SPM Resorts, Inc., Margaret Johnson, Karen*
    *Middleton, and William Young,*

**Defendant Bluebeard's Castle, Inc.**
    *Unrepresented entity.*

<u>ORDER</u>

**GÓMEZ, J.**

Before the Court is the motion of defendants SPM Resorts, Inc., Margaret Johnson, Karen Middleton, and William Young (the "SPM defendants") to refer this matter to arbitration.

## I.   FACTUAL AND PROCEDURAL HISTORY

Defendant SPM Resorts, Inc. ("SPM") is a resort management company. SPM manages Bluebeard's Castle, Inc. ("Bluebeard's"), a hotel located on St. Thomas, U.S. Virgin Islands.  At all relevant times William Young ("Young") was president and chief operating officer of SPM. Karen Middleton ("Middleton") was the corporate human resources manager for SPM. Margaret Johnson ("Johnson") was employed by SPM as the general manager at Bluebeard's.

The plaintiff Michelle May ("May") was hired by Johnson on February 7, 2011, to work at Bluebeard's. In the course of beginning her employment at Bluebeard's, May signed various employment forms, including an employment contract. Johnson was May's supervisor.

May alleges that during her employment at Bluebeard's, Johnson was discriminatory in her treatment of black West Indian employees. May claims that Johnson allowed white employees to use company vehicles but disallowed use by black employees such as May, despite May's contract allowing for vehicle use.  May also claims that Johnson provided housing as compensation to white employees, but denied it to black employees.  Among other things, May also claims that staff discipline procedures, hours, compensation, and accountability was disparate and based on

race.  She states that she informed the MRL defendants of this disparate treatment.

May alleges that Young and Middleton knew or had reason to know of this ongoing discrimination. She further claims that, despite this knowledge, nothing was done to redress the discriminatory practices.

May claims that she confronted Johnson about the alleged discriminatory practices.  She states that as a result of this effort, Johnson sent May home on indefinite suspension for insubordination.  On June 10, 2011, Young sent May a letter terminating her employment. Finally, May states that as a result of this alleged discrimination and her eventual termination, she suffered injuries.

On October 5, 2011, May filed a complaint in this matter. The complaint was amended on May 23, 2013 (the "First Amended Complaint").

On July 16, 2013, the SPM defendants filed the instant motion to compel arbitration.  To date, May has not responded to the motion.

Thereafter, on August 13, 2013, May filed a second amended complaint (the "Second Amended Complaint").  In it, May alleged four claims: (1) Prohibited Employment Discrimination on the Basis of Race, Color and National Origin under Title 7 of the United States Code and Title 10 of the Virgin Islands Code; (2)

Negligent Supervision; (3) Intentional Infliction of Emotional

Distress; and (4) Defamation.

## II.  <u>DISCUSSION</u>

Congress enacted the Federal Arbitration Act ("FAA"), 9

U.S.C. §§ 1-16, to overcome judicial resistance to arbitration.

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443

(2006). The FAA provides guidance on what a court is required to

do where parties to a dispute are also parties to an arbitration

agreement. Under the FAA, federal courts are required to enforce

written agreements to arbitrate disputes. "The FAA compels

judicial enforcement of a wide range of written arbitration

agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105,

111 (2001); *see also Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d

Cir. 2003).

"Under... the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-

16, the court must determine whether the parties entered into a

valid arbitration agreement. In conducting this inquiry the

district court decides only whether there was an agreement to

arbitrate, and if so, whether the agreement is valid." *Plaskett*

*v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 338 (D.V.I. 2003)

"[U]pon being satisfied that the making of the agreement

for arbitration ... is not in issue, the court shall make an

order directing the parties to proceed to arbitration in

accordance with the terms of the agreement." 9 U.S.C. § 4. If a

party to an agreement that requires arbitration alleges

wrongdoing that involves matters covered by an arbitration

agreement, "the claims must be arbitrated, regardless of the

legal labels ascribed to them." *Brayman Constr. Corp. v. Home

Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (citing *Genesco, Inc.

v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)).

### III. <u>ANALYSIS</u>

May's Second Amended Complaint challenges her treatment

while an employee of SPM.  She also challenges her eventual

termination.  To determine whether those claims are arbitrable,

the Court must first address whether there is a valid

arbitration provision.

In the course of being hired, May signed a document

entitled "Employee 'Mutual Agreement to Arbitrate'" ("EMAA").

The EMAA states:

> [I]n order to gain the benefits of a speedy,
> impartial, and cost-effective dispute resolution
> procedure, and for good and valid consideration
> as covenanted below and in addition to any other
> consideration, and intending to be legally
> bound, SPM Resorts, Inc. (as management company
> for Bluebeard's Castle in St. Thomas, USVI),
> hereinafter referred to as "SPM", and I hereby
> agree that, except as otherwise provided herein,
> all disputes and claims for which a court
> otherwise would be authorized by law to grant
> relief, in any manner, that I may have, now or
> in the future, during or after my employment
> with SPM, of any and every kind or nature
> whatsoever with or against SPM, any of SPM's
> affiliated or subsidiary companies, partners,
> joint ventures, owners of properties SPM

Case: 3:12-cv-00078-CVG-RM  Document #: 68  Filed: 02/28/14  Page 6 of 11
May 28 14 01:51a  San Pedro & Assoc. Inc.  *

Civil No. 2012-78
Order
Page 6

      manages, and/or any of his, her, its or their
directors, officers, employees or agents, or any
disputes and claims that SPM may have against me
(collectively "Claims"), shall be submitted to
the American Arbitration Association ("AAA") to
be resolved and determined through final and
binding arbitration before a single arbitrator
and to be conducted in accordance with the
National Rules for the Resolution of Employment
Disputes of the AAA. . . .

(ECF No. 37-1, EMAA.)

     The EMAA, covers any claims

      that arise out of or are related to the offer of
employment or promotion extended by SPM to [the
employee], any withdrawal or recission of that
offer, any aspect of [the employee's] employment
with SPM or the terms and conditions of that
employment, any claim for bonus, vacation pay or
other compensation, *any termination of that
employment* and *any Claim of discrimination*,
retaliation, or harassment based upon age, race,
religion, sex, ethnicity, . . . *or any other
unlawful basis, or any other unlawful conduct,
under any applicable federal, state, local or
other statutes* . . . including, without
limitation, Claims [the employee] may have under
. . . Title VII of the Civil Rights Act of 1964,
the Civil Rights Act of 1991, the Virgin Islands
Civil Rights Act and the Virgin Islands
Discrimination in Employment Act . . .

(ECF No. 37-1, EMAA)(emphasis added).

     "A federal court must generally look to the relevant state

law on the formation of contracts to determine whether there is

a valid arbitration agreement under the FAA." *Blair v. Scott

Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).  In the

Virgin Islands, a contract is formed when the parties mutually

assent to the terms and conditions of the agreement. *See, e.g.,*

Case: 3:12-cv-00078-CVG-RM Document #: 68 Filed: 02/28/14 Page 7 of 11
May v. Bluebeard's Castle, Inc., et al.
Civil No. 2012-78
Order
Page 7

*Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 761 F.

Supp. 1231, 1233 (D.V.I. 1991), *aff'd* 998 F.2d 145 (3d Cir.

1993). Mutual assent occurs where there is an offer from one

party which is accepted by the other party. *Gardiner v. V.I.*

*Water and Power Auth.*, 896 F. Supp. 491, 497 (D.V.I. 1995). A

contract also requires consideration. *Plaskett*, 243 F. Supp. 2d

at 338. Thus a contract is formed where there is: (1) an offer,

(2) an acceptance, and (3) consideration.

Here, Bluebeard's and SPM, through Johnson, hired May on

February 7, 2011. May was given employment documents that set

out the terms and conditions of her employment.  That

constituted an offer from SPM and Bluebeard's. *See Gardiner*,

896 F. Supp. at 497 (stating that an offer exists where the

offeree would be justified in understanding that all that was

necessary to conclude the bargain was the offeree's assent.) May

signed those employment agreements, and there is no indication

that she altered or contested the terms while doing so.  This

constitutes acceptance. *Id.* ("An offer is accepted if, and only

if, the terms of the acceptance mirror those of the offer.")

Finally, as both parties were bound by the arbitration clause,

there existed adequate consideration. *Blair*, 283 F.3d at 603

("When both parties have agreed to be bound by arbitration,

adequate consideration exists[.]") The Court also notes that May

does not challenge the validity of the agreement.  As such, the
Court finds that the arbitration agreement was valid.

Having determined that the arbitration clause is valid, the
Court must next determine whether the claims in May's Second
Amended Complaint are covered by the arbitration clause.

In her Second Amended Complaint, May asserts four claims:
(1) Prohibited Employment Discrimination on the Basis of Race,
Color and National Origin under Title 7 of the United States
Code and Title 10 of the Virgin Islands Code; (2) Negligent
Supervision; (3) Intentional Infliction of Emotional Distress;
and (4) Defamation.

It is clear from both the counts and the facts alleged that
the focus of the ongoing dispute is Johnson's alleged
discriminatory conduct and the alleged failure to prevent that
conduct by the other SPM Defendants and Bluebeard's.
Discriminatory conduct, and claims related thereto, are clearly
within the ambit of the arbitration clause May signed.  (ECF No.
37-1, EMAA) (stating it relates to any claim of discrimination
on the basis of race or ethnicity and any claim related to the
alleged violation of federal or local law).  Count One, which
specifically alleges discrimination on the basis of race in
violation of federal and local law, is thus within the ambit of
the arbitration clause.

It is well-established that where separate tort claims arise out of the same facts as clearly arbitrable claims, a broadly worded arbitration provision embodies such claims. *Richardson v. V.I. Port Auth.*, Civ. No. 2009-139, 2010 WL 1641154, at *12 (D.V.I. April 21, 2010); *see CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir.2005) ("Broadly worded arbitration clauses ... are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement); *P & P Indus. v. Sutter Corp.*, 179 F.3d 861, 871-872 (10th Cir.1999) (arbitration clause which provided that "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" shall be arbitrable, was broad enough to encompass tort claims where the tort allegations were closely connected to breach of contract action).

As Count One squarely addresses allegations of racial discrimination and violations of federal and local anti-discrimination laws, that Count is within the reach of the arbitration clause. Thus, to the extent that the alleged torts in this case are related to the same facts underlying the discrimination claim, those torts are within the arbitration clause's reach as well. *See CD Partners, LLC*, 424 F.3d at 800; *P & P Indus.*, 179 F.3d at 871-872; *Richardson*, 2010 WL 1641154, at *12.

The Count Two, Negligent Supervision, alleges that Margaret Johnson acted in a discriminatory manner against black West Indian employees.  It further alleges that the other SPM Defendants were aware of this discriminatory activity, and failed to address it.  These facts, which underpin Count Two, are some of the same facts alleged in Count One, the discrimination claim.  That is, the facts are the same between the tort claim in Count Two, and the clearly arbitrable claims in Count One.

Similarly, May's claim in Count Three, Intentional Infliction of Emotional Distress, is based on factual allegations of discriminatory behavior.  May claims that during her employment at Bluebeard's, she was subjected to a pattern of race-based discrimination.  She further alleges that as a result of the alleged discrimination, she was terminated from her position.  May alleges that the racial discrimination she endured was extreme and outrageous conduct, and that as a result she suffered emotional distress.  The factual underpinnings of this claim, that there was ongoing racial discrimination which was never addressed or ameliorated and that such discrimination resulted in termination, also underpin Count One's discrimination claims. Thus, the facts are the same between the tort claim in Count Three, and the clearly arbitrable claims in Count One.

Finally, Count Four alleges that the defendants defamed May.  The defamatory statements at issue purportedly occurred when Margaret Johnson gave information to the manager of another resort about May.  May claims that the information Johnson gave was false.  The underpinnings of this claim, therefore, are allegations that Johnson, for discriminatory or retaliatory reasons, prevented May from seeking employment at other resorts. These allegations are intertwined with the allegations in Count One. That is, both counts allege the same or related facts – that Johnson discriminated against black West Indian employees both in word and action.  As such, this claim would also be arbitrable as it is related to a clearly arbitrable claim, Count One.

The premises considered, it is hereby

**ORDERED** that this matter is referred to arbitration.

S_____
            **Curtis V. Gómez**
            **District Judge**